2014 UT App 91

**STATE of Utah, Plaintiff and Appellee,**

v.

**Shane Wells LANDON, Defendant
and Appellant.**

No. 20130068–CA.

Court of Appeals of Utah.

April 24, 2014.

Allyson Barker, for Appellant.

Simarjit S. Gill and Colleen K. Witt, for Appellee.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judge JAMES Z. DAVIS and Senior Judge RUSSELL W. BENCH concurred.[1]

Memorandum Decision

ORME, Judge:

¶ 1 Defendant Shane Landon was convicted of obstruction of justice, a class A misdemeanor, and driving on a suspended or revoked license, a class C misdemeanor. He now appeals those convictions, arguing that the trial court improperly admitted evidence of other acts under rule 404(b) of the Utah Rules of Evidence. Because we conclude that Defendant has failed to demonstrate prejudice, we affirm.

¶ 2 Defendant was arrested for obstructing a U.S. Marshal's attempts to serve a warrant for the arrest of Defendant's cousin. At his trial, Defendant testified on his own behalf and claimed he did not think the marshal with whom he spoke on the phone was a real law enforcement officer. The marshal recounted that when he spoke with Defendant on the phone, he referred to specific statutes dealing with harboring a fugitive. This testimony, coupled with evidence that the cousin's mother was crying and emphatic that the police and marshals were really at her house, was clearly calculated to dispel Defendant's claim that he assumed the phone call was a ruse or a practical joke. In a further effort to refute Defendant's contention, the State attempted to elicit testimony from Defendant regarding his general familiarity with arrest warrants and how they are served. After several failed attempts by the State to induce a meaningful response from Defendant, who was evasive and vague in his answers, the trial court intervened and asked, "Have you ever been arrested on a warrant?" Defendant responded, "Yes, I have." The trial court then prohibited the State from inquiring further into the nature of Defendant's warrant arrest or whether he was actually convicted of any crime.[2]

¶ 3 We "will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. The court did allow the State to ask whether Defendant's arrest concerned a crime involving

dishonesty. *See* Utah R. Evid. 609(a)(2) (allowing impeachment of a witness by evidence of a criminal *conviction* if the elements of the crime require proving "a dishonest act or false statement") (emphasis added). Defendant indicated that it did not.

reasonably [a]ffect the likelihood of a different verdict." *State v. Houskeeper*, 2002 UT 118, ¶ 26, 62 P.3d 444. *See also State v. Cruz*, 2005 UT 45, ¶ 16, 122 P.3d 543 (discussing the prejudice element of the plain error doctrine, which requires a showing that "absent the error, there is a reasonable likelihood of a more favorable outcome"); *State v. Lafferty*, 2001 UT 19, ¶ 35, 20 P.3d 342 (stating that a trial court's error is only reversible if the error is harmful, such that "there is a sufficiently high likelihood of a different outcome"). "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987).

¶ 4 Thus, even assuming that the trial court committed an evidentiary error in admitting—indeed, in directly eliciting—evidence of Defendant's prior arrest pursuant to an outstanding warrant, and even assuming that the error was properly preserved for appeal or, if it was not, that the plain error exception would otherwise apply, we conclude that Defendant has failed to demonstrate prejudice. *See* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶ 5 In an attempt to demonstrate prejudice, Defendant analogizes to *State v. Leber*, 2010 UT App 387, 246 P.3d 163. In *Leber*, the defendant was accused of felony child abuse based on an incident involving his sixteen-year-old son. *Id.* ¶ 1. Because "the evidence presented at trial was not clearly supportive of either" the son's or the defendant's version of events, the case rested on a credibility determination as to whose version of events was accurate. *Id.* ¶¶ 12, 18. The trial court then erroneously admitted evidence of the defendant's prior instance of child abuse against his son, a prior assault charge against the defendant, and a domestic violence incident involving the defendant and his son's mother. *Id.* ¶¶ 4, 8. We held that the erroneous introduction of this evidence created a reasonable likelihood of a different outcome, essentially by tipping the credibility balance rather dramatically against the defendant, thus undermining our confidence in the jury's verdict. *Id.* ¶ 18.

¶ 6 Here, as in *Leber*, the case depended on a credibility determination as to whose version of events was accurate, Defendant's or the marshal's. However, unlike *Leber*, there is additional evidence in this case that supports the marshal's version of events. The testimony of Defendant's aunt, as well as parts of Defendant's own testimony, corroborated the marshal's testimony. For example, Defendant's aunt and the marshal both testified that she became scared and upset while speaking with Defendant on the phone and urged him to bring his cousin to the marshals. And the marshal and Defendant testified similarly in many regards about the content of their telephone conversations. For example, the marshal testified that Defendant "definitely knew who I was," and Defendant conceded that there came a time during the conversations when he "had an inclination it could be true."

¶ 7 Additionally, in *Leber*, the evidence of the defendant's prior acts of abuse and assault were very similar—indeed, virtually identical—to the type of conduct alleged against the defendant in that case. Conversely, in this case the introduction of evidence concerning Defendant's prior warrant arrest, without additional information about the general character of the crime or the existence of a conviction, presents significantly less risk of harm than did the propensity evidence in *Leber*. Therefore, Defendant has not met his burden of showing prejudice, i.e., of demonstrating a sufficiently high likelihood of a different outcome. *See State v. Lafferty*, 2001 UT 19, ¶ 35, 20 P.3d 342 (noting that the burden of showing the harmfulness of an error rests on the complaining party).

¶ 8 Under the circumstances, the evidence presented at trial was more than sufficient to convince a jury of Defendant's guilt, even absent the arguably improper evidence of his prior arrest. Consequently, there is not a reasonable likelihood of a different result absent that evidence, and our confidence in the jury's verdict is not undermined.

¶ 9 Affirmed.